# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 14-cv-1637(JFB)(AKT)

_____

KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

Plaintiff,

VERSUS

FELIX MONTALVO, WHEELXCHANGE, LLC,

Defendants.

_____

**MEMORANDUM AND ORDER**
July 24, 2014

_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Keystone Automotive Industries ("plaintiff") has sued defendants Felix Montalvo ("Montalvo") and Wheelxchange[1] alleging that Montalvo breached a restrictive covenant and other provisions of an Asset Purchase Agreement ("the APA") under which Montalvo sold a wheel repair business to plaintiff. Montalvo remained in the business and became plaintiff's employee, though the parties dispute whether his employment was "at-will." Plaintiff fired Montalvo in March 2014, and Montalvo now counter-claims that the termination was done in bad faith and in violation of the APA, which he argues required termination to be "for cause." Plaintiff has moved to dismiss all counter-claims, arguing that the APA unambiguously states that Montalvo is an "at-will" employee who may be fired with or without cause.

Having reviewed the parties' submissions and the text of the APA, and heard oral argument, the Court concludes that the APA unambiguously creates an "at-will" relationship between Montalvo and plaintiff, such that plaintiff could lawfully terminate him for any reason, either "for Cause" or "without Cause," in the words of paragraph 10.9 of the APA. Under New York law, an at-will employee has no cause of action based on breach of an employment contract or the implied covenant of good faith and fair dealing, and accordingly, those counter-claims are dismissed. The Court grants plaintiff's motion in its entirety, because all of plaintiff's counter-claims are dependent on the breach of contract and implied covenant claims.

_____

[1] Wheelxchange filed no counter-claims and has not participated in the litigation of this motion.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the counter-claims, or were admitted in Montalvo's answer. The Court assumes these facts to be true for the purpose of deciding this motion, and construes them in the light most favorable to Montalvo, the non-moving party.

Before November 1, 2013, Montalvo was a partial owner of a wheel repair and refurbishing business known as "Wheel Fix It," located in Freeport, New York. (Compl. ¶ 10; Def. Ans. ¶ 10.) The complaint and the counter-claims allege that Montalvo and other parties sold Wheel Fix It to plaintiff via the APA on November 1, 2013. (Compl. ¶ 14; Def. Ans. ¶ 14; Def. Counter-Cl. ¶ 5.) The parties agree that plaintiff purchased Wheel Fix It and a related entity for $7,764,000, but they dispute what if any portion of this amount went to Montalvo.

As part of the APA, Montalvo remained employed by plaintiff, in the role of Operations Manager. (Compl. ¶ 17; Def. Ans. ¶ 17.) Paragraph 10.9 of the APA is entitled "Employment Matters" and, with references to non-parties removed, reads in pertinent part:

> As of the Closing, [plaintiff] will employ the Shareholders on an at-will basis at the following annual starting salaries: . . . [Montalvo] at $80,000 as Operations Manager . . . . The Shareholders will be eligible for an annual bonus . . . . In the event that . . . [Montalvo] (a) resigns from employment . . . , or (b) is terminated for Cause (as defined in Section 11.3.6 of this Agreement) . . . prior to November

> 1, 2016, then the rental amount payable to the landlord under the Lease shall be reduced . . . . Between November 1, 2013 and November 1, 2016, . . . [Montalvo's] salary shall [not] be reduced, nor shall [he] be placed in a lesser position of status and authority, and [he] shall . . . be eligible for merit-based salary increases consistent with such increases provided to similarly situated management personnel. **Nothing contained in this paragraph is intended to alter the at-will employment relationship between [plaintiff] and [Montalvo]**. In the event . . . [Montalvo's] employment is terminated . . . without Cause . . . the right of [plaintiff] as "Tenant" under the Lease to exercise the Rent Reduction shall terminate and be of no force or effect.

(Ex. A to Compl. ¶ 10.9 (emphasis added).)

The other APA provision relevant to this motion is paragraph 11.3.6, which is specifically referenced in paragraph 10.9 (above) and defines "Cause" for termination. It lists such conduct as "a felony or other crime involving moral turpitude" and "willful misconduct or fraud," but nowhere states that these are the only permissible grounds for termination, or that termination may only be for cause. Paragraph 11.3.6 does not address termination "without Cause," which is explicitly included in paragraph 10.9, as shown above.

According to Montalvo, he was terminated by plaintiff on March 11, 2014. (Def. Counter-Cl. ¶ 13.) Previously, he alleges that plaintiff terminated the employment of approximately 30 other

Wheel Fix It workers in order to save money, but this only caused revenues to decline even further. (*Id.* ¶¶ 8, 10.) Montalvo contends that his firing was another attempt by plaintiff to "reduce its remaining monetary obligations." (*Id.* ¶ 13.) Plaintiff's underlying suit against Montalvo alleges that he breached a restrictive covenant and other provisions of the APA.

## B. Procedural History

Plaintiff filed its complaint on March 12, 2014. Montalvo answered and filed several counter-claims on April 10, 2014. Plaintiff moved to dismiss all counter-claims on May 13, 2014, and Montalvo responded in opposition on June 13, 2014. Plaintiff replied in further support of its motion on June 27, 2014, and the Court heard oral argument on July 17, 2014.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two important considerations for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

Where a motion to dismiss presents itself before the court, a court may examine the following: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, [and] (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *Nasso v. Bio Reference Labs.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (internal quotation marks and citation omitted). The parties do not dispute that the Court may consider the text of the APA, which plaintiff attached as an exhibit to the complaint and which Montalvo cited throughout his counter-claims.

## III. DISCUSSION

Montalvo asserted seven counter-claims, but has since withdrawn his fifth and sixth

causes of action. The parties agree that Montalvo's fourth and seventh claims—which seek a declaratory judgment and attorney's fees—are dependent on his first three claims, based upon breach of contract and the implied covenant of good faith and fair dealing.

Thus, the discussion turns initially to Montalvo's first three claims, the sufficiency of which rest on the question whether Montalvo was an at-will employee. If Montalvo was an at-will employee, then his employment was "'terminable at any time by either party,'" *Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (1987)), and his breach of contract claim must fail as a matter of law. *Gencarelli v. Cablevision Sys. Corp.*, No. 10-cv-04092 (JFB)(ARL), 2012 WL 1031441, at *3 (E.D.N.Y. Mar. 27, 2012) (collecting cases). Ultimately, the Court concludes that the plain language of the APA, as well as the presumption of at-will employment under New York law, which Montalvo failed to rebut, made him an at-will employee.

A. Breach of Contract

Montalvo's first counter-claim, for breach of contract, alleges that the APA guaranteed him a three-year term of employment. (Def. Counter-Cl. ¶ 15.) This allegation is based on the sentence in paragraph 10.9, quoted above, which states that Montalvo's status and salary would not be reduced from November 1, 2013, until November 1, 2016, and that he would be eligible for merit-based salary increases. (*Id.* ¶ 16.) This sentence does not explicitly purport to guarantee Montalvo's employment during that time period, and in fact, the very next sentence states that "[n]othing contained in this paragraph is

intended to alter the at-will employment relationship."

Notwithstanding this disclaimer, in Montalvo's view, the three-year term mentioned in the salary and status guarantees makes the APA ambiguous concerning whether he was employed at-will, and makes dismissal inappropriate because the trier of fact must determine the meaning of the APA by examining the totality of the circumstances. However, Montalvo's argument fails for two reasons. First, the APA unambiguously provides that Montalvo was an at-will employee. Second, even in the absence of that language, the APA presumptively provides for at-will employment, and Montalvo has not rebutted that presumption.

1. Contract language

"Under New York law, which the parties agree is controlling here, the initial question for the court . . . with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (internal quotation marks and citation omitted). "The matter of whether the contract is ambiguous is a question of law for the court." *Id.* Thus, to the extent that Defendant argues that the meaning of "at-will" is one for resolution by the trier of fact, that argument misses the prior question whether the term is ambiguous in the first place.[2]

---

[2] The Second Circuit's decision in *Jones v. Dunkirk Radiator Corp.*, on which defendant relies, is not to the contrary. There, the Second Circuit cited New York law for the proposition that in at-will cases, the trier of fact must consider "the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives." 21 F.3d 18, 22 (2d Cir. 1994). Later, however, in *Baron*, the Second Circuit clarified that

"No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 467 (internal quotation marks and citations omitted). Here, the words used in the APA's employment provision have a definite and precise meaning: that Montalvo was an employee who could be fired at the will of his employer, either for cause or without it. Not only does the employment provision's opening sentence state that Montalvo would be employed "on an at-will basis," it also includes the disclaimer that "[n]othing contained in this paragraph is intended to alter the at-will employment relationship." The same paragraph also notes that Montalvo could be terminated either "for Cause" or "without Cause." The Court concludes that this explicit language leaves no reasonable basis for a difference of opinion about its meaning.[3]

Montalvo argues that "at-will" is not a term understood by laymen, and that it would only have been unambiguous if the APA specified that "at-will" meant termination "at any time and for any reason." Although many cases have involved clauses that amplify the meaning of "at-will" in this manner, *see, e.g.*, *Lobosco v. N.Y. Telephone Co./NYNEX*, 96 N.Y.2d 312, 315 (2001), Montalvo has not cited a single case suggesting that the absence of such language renders an explicit at-will provision (including those with references to termination "for Cause" and "without Cause") ambiguous.[4] *See Law Debenture Trust Co.*, 595 F.3d at 467 ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." (internal quotation marks and citation omitted)). The Court has identified no New York case addressing this point, but courts around the country have upheld similar at-will disclaimers which did not include the "at any time and for any reason" language. *See, e.g.*, *Neung Kang v. PB Fasteners*, 268 F. App'x 545, 547 (9th Cir. 2008) (concluding that employment remained at will where disclaimer stated that

---

"[a]lthough this remains the case generally, where a sufficiently unambiguous disclaimer, conspicuously placed . . . such that the employee reasonably could be expected to read it is at issue, the totality of the circumstances inquiry is unnecessary; the implied contract claim may be dismissed as a matter of law." 271 F.3d at 85. In other words, the Court's conclusion that the at-will employment provision is unambiguous means that dismissal is appropriate without consideration of circumstances beyond the four corners of the APA.

[3] Defendant has not supported his argument that "at-will" is susceptible to multiple meanings, while plaintiff has cited the Merriam-Webster definition, which states that "at will" means "as one wishes; as or when it pleases or suits oneself." Merriam-Webster.com (July 15, 2014, 2:40 p.m.), http://www.merriam-webster.com/dictionary/at%20 will; *see also* Cambridge Dictionaries Online (July 15, 2014, 2:42 p.m.), http://dictionary. cambridge.org/us/dictionary/american-english/at-will (defining "at will" as "when you want to"). "'[I]t is common practice for the courts of [New York] State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract.'" *10*

---

*Ellicott Sq. Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011) (quoting *Mazzola v. Cnty. of Suffolk*, 533 N.Y.S.2d 297, 297 (N.Y. App. Div. 1988) (further citation omitted)). These definitions support the Court's conclusion that "at-will" as used in paragraph 10.9, combined with the contextual references to termination for and without cause, unambiguously meant that plaintiff could fire Montalvo for any reason.

[4] The three cases cited by Montalvo in this section of his brief merely suggest that New York courts sometimes find employment contracts ambiguous as to duration. None of these cases involved an explicit "at-will" provision. *See TSR Consulting Servs. v. Steinhouse*, 699 N.Y.S.2d 375 (N.Y. App. Div. 1999); *Levey v. Leventhal & Sons*, 647 N.Y.S.2d 597 (N.Y. App. Div. 1996); *Myers v. Coradian Corp.*, 459 N.Y.S.2d 929 (N.Y. App. Div. 1983).

employer was "an at will employer" and that "an employee may be terminated without cause"); *Cutter v. Lincoln Nat'l Life Ins. Co.*, 794 F.2d 352, 355 (8th Cir. 1986) ("The 'with or without cause' provision essentially makes the employment agreement an 'at will' employment contract."); *Grove v. Loomis Sayles & Co., L.P.*, 810 F. Supp. 2d 146, 149-50 (D.D.C. 2011) (concluding that employment remained at will where disclaimer stated "your employment with Loomis Sayles is 'at-will'" and "all employment relationships with Loomis Sayles are on an at-will basis"); *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 604 (D.N.J. 2003) ("[W]here an employee has executed a separate written contract in which he has expressly agreed that his employment can be terminated 'at will,' it is that agreement . . . which establishes the employee's 'reasonable expectations' concerning the nature of his employment relationship."); *Bowser v. McDonald's Corp.*, 714 F. Supp. 839, 841-42 (S.D. Tex. 1989) (concluding that employment remained at will where disclaimer in "the employee handbook at issue expressly state[d] that employment [was] 'at-will'"); *Abney v. Baptist Med. Ctrs.*, 597 So.2d 682, 683 (Ala. 1992) (concluding that employment remained at will where disclaimer stated "I understand that my employment is terminable at will by me or by the employer").

The Court finds these cases persuasive on the plain meaning of the phrase "at-will," and concludes that the APA's explicit references to at-will employment are unambiguous. Finding them to be ambiguous would, in effect, render them superfluous, as well as the reference to termination "without Cause." However, "New York law . . . disfavors interpretations that render contract provisions meaningless or superfluous," *Manley v. AmBase Corp.*,

337 F.3d 237, 250 (2d Cir. 2003), and Montalvo has not offered an interpretation that could reasonably give effect to these terms. His argument that "at-will" should be construed to mean at *his* will only, while binding plaintiff to termination for-cause, has absolutely no support in the text of the APA, and interpreting the APA in that manner would be completely inconsistent with its plain meaning, and with the remaining language in the APA provision at issue. *Accord Law Debenture Trust Co.*, 595 F.3d at 467 ("[T]he court should not find the contract ambiguous where the interpretation urged by one party would strain [ ] the contract language beyond its reasonable and ordinary meaning." (internal quotation marks and citation omitted)). Montalvo has not identified a single contract provision suggesting that at-will employment was his right alone, and therefore the Court concludes that it applied to both parties and is unambiguous.[5]

2. Presumption

Montalvo's argument also fails because "[i]n New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Baron*, 271 F.3d at 85

---

[5] The sole case on which Montalvo relies to support this interpretation of the APA is readily distinguishable. In *Abady v. Interco Inc.*, the profit-sharing agreement stated (as summarized by the court) that plaintiff would "continue as such employee for the earning period which is three years." 430 N.Y.S.2d 799, 801 (N.Y. App. Div. 1980). The court concluded that the same document granted voluntary termination at-will to the employee only. *Id.* at 804. Montalvo has neither cited a similar provision in the APA nor identified any other analogous circumstances in this case, and the Court has detected none. Paragraph 10.9 does not assign the at-will right to either party on its face, and the reference to termination "without Cause" would be rendered superfluous by Montalvo's interpretation.

(internal quotation marks and citations omitted); *see also Horn v. N.Y. Times*, 100 N.Y.2d 85, 90-91 (2003) (noting long history and force of presumption in New York). In other words, the Court's starting point is to assume that the APA provides for at-will employment (which is of course only strengthened by its explicit language to that effect). Montalvo may only rebut this presumption "by establishing an 'express limitation in the individual contract of employment' curtailing an employer's right to terminate at will." *Id*. (internal quotation marks and citation omitted). Establishing an express limitation is an "explicit and difficult pleading burden." *Sabetay*, 69 N.Y.2d at 334.

The language identified by Montalvo as an "express limitation" is the status and salary guarantee in paragraph 10.9.[6] This language does not purport to guarantee any defined term of employment to Montalvo, and if there was any doubt that it did, it is foreclosed by the disclaimer ("Nothing contained in this paragraph is intended to alter the at-will employment relationship"). Thus, the language of the APA itself makes clear that the salary and status guarantees are not express limitations of plaintiff's right

---

[6] To the extent that Montalvo separately argues that the existence of termination "for Cause" as defined in paragraph 11.3.6 means that he can *only* be terminated for cause, the plain text of the APA does not support that view, because it explicitly mentions at-will employment and termination "without Cause." *Cf. Bernhardt v. Tradition N.A.*, 676 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2009) (rejecting argument that because policy of termination for violating rules existed, such policy limited employer's ability to terminate for other reasons); *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006) ("[A] statement that an employee may be dismissed for cause is not a specific agreement that an employee may be dismissed only for cause.").

to terminate defendant at will.[7] *See Baron*, 271 F.3d at 88 (holding that dismissal of breach of contract claim is appropriate "where a sufficiently unambiguous disclaimer . . . [is] conspicuously placed . . . such that the employee reasonably could be expected to read it").

Furthermore, New York courts have considered provisions similar to those cited by defendant, and "have repeatedly held that temporal references to compensation do not create employment for a fixed duration and they do not limit an employer's right to terminate an employee at will." *Heuler v. Decision Economics, Inc.*, No. 06 Civ. 4039, 2007 WL 844671, at *3 (S.D.N.Y. Mar. 19, 2007) (granting motion to dismiss); *see also Lamb v. Money Transfer Sys., Inc.*, No. 12-CV-6584 CJS, 2013 WL 5216442, at *6 (W.D.N.Y. Sept. 16, 2013) ("[T]he law of New York State . . . holds that such a compensation provision does not establish a

---

[7] In comparison, where courts have found express limitations of an employer's right to terminate an employee at will, the language cited by the employee typically addresses the issue of termination, and limits the employer's rights in a clear and direct manner. *See, e.g.*, *Mycak v. Honeywell, Inc.*, 953 F.2d 798, 799 (2d Cir. 1992) ("Mycak was also given a copy of a Honeywell employee handbook . . . . [which] contained a job security policy that provided specific procedures to be followed if a work force reduction should become necessary."); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 852 (2d Cir. 1985) ("The Operations Manual . . . expressly provides that seniority be the sole factor where terminations stemming from job elimination or force reduction must be made, and that employees with appellees' seniority obtain a conditional entitlement to defer retirement past the age of sixty."); *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 460-61 (1982) ("[T]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed."). Defendant has neither identified any analogous language in the APA or any other document, nor pled that he received any similar assurance.

definite term of employment. Specifically, a writing setting forth an employee's salary for a specific period does not bind the employer to retain the employee for any length of time."); *In re Vasu*, 129 F. Supp. 2d 113, 118 (D. Conn. 2001) ("The two-year references in the Letter are limited to creating a schedule for the timing of the vesting of options of shares and equity interests. Nothing in the Letter or in the factual allegations of Vasu's complaint indicates the two-year references are connected in any way to the duration of Vasu's employment."). Thus, even if the APA's employment provision did not contain the above-quoted disclaimer, the references to three years of salary and status protection would not entitle defendant to employment for a fixed term. *Cf. Mycak*, 953 F.2d at 802 (noting that express limitations featured "mandatory and unqualified terms"). Of course, the presence of the disclaimer makes the at-will nature of defendant's employment that much clearer, and defendant has not carried his "explicit and difficult pleading burden" to show otherwise. *Sabetay*, 69 N.Y.2d at 334.

B. Implied Covenant

Montalvo's second and third causes of action allege that plaintiff terminated him in bad faith, and in doing so violated the implied covenant of good faith and fair dealing. The New York Court of Appeals has addressed this argument before, in the context of at-will employment:

> New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied will be enforced. . . . In such instances the implied obligation is in aid and furtherance

of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship.

*Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983).

In *Murphy*, the Court of Appeals held that it would be inconsistent with an at-will employee's contract to allow him, once terminated, to pursue a claim based on the implied covenant. *Id.* The at-will relationship affords the employer "an unfettered right to terminate the employment at any time." *Id.* "In the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination." *Id.* at 304-05; *see also Kendall v. Fisse*, No. 00 CV 5154SJ, 2004 WL 1196811, at *6 (E.D.N.Y. May 25, 2004) ("No implied obligation of good faith and fair dealing exists with respect to an at-will employment contract.").[8]

In *Murphy*, the employee's contract was informal, and did not contain the explicit terms found in the APA, which unambiguously provide for an at-will employment relationship. Thus, it would be even more inconsistent here to imply a duty not to fire Montalvo for a bad-faith reason, where the contract allows plaintiff to fire him for any reason at all, and even explicitly mentions both "for Cause" and "without

---

[8] Montalvo cites *Pernet v. Peabody Engineering Corp.* to suggest that an employer breaches the implied covenant by taking action in order to deprive the employee of his benefit under the contract, but *Pernet* is distinguished by the fact that the plaintiff there, unlike Montalvo, plausibly alleged that his contract provided a five-year employment guarantee. *See* 248 N.Y.S.2d 132 (N.Y. App. Div. 1964).

Cause" situations. *See Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 190 (1989) ("If there was no protection against discharge of an at-will employee in *Murphy* . . . and *Sabetay* . . ., where there was no contractual arrangement at all, there surely can be none here where the related contract expressly confirms the unavailability of that protection.").

In other words, even if, as Montalvo alleges, plaintiff harbored the bad-faith motive of avoiding its obligation to pay him, the APA would still allow plaintiff to terminate Montalvo.[9] *Cf. Berzin v. W.P. Carey & Co., Inc.*, 740 N.Y.S.2d 63, 64 (N.Y. App. Div. 2002) ("[P]laintiff claims that defendant's sole motivation in terminating him was to prevent the vesting of additional stock options and other compensation benefits, and that his termination therefore violated the covenant of good faith and fair dealing implied in every contract. Even if defendant were so motivated, plaintiff has no cause of action for breach of contract. The covenant of good

---

[9] Montalvo's argument to the contrary relies on inapposite cases involving "earn-out" payments which do not address the question of at-will employment. *See generally Keene Corp. v. Bogan*, No. 88 CIV. 0217 (MBM), 1990 WL 1864 (S.D.N.Y. Jan. 11, 1990); *Wagner v. JP Morgan Chase Bank*, No. 06 Civ. 3126 (RJS), 2011 WL 856262 (S.D.N.Y. Mar. 9, 2011). Montalvo's status as an at-will employee distinguishes him from those plaintiffs, because even if, construing the APA most favorably to him, he could normally claim the protection of the implied covenant in a similar manner to the plaintiffs claiming earn-out payments in the above cases, Montalvo bargained away that protection by agreeing to become an at-will employee. *See Ingle*, 73 N.Y.2d at 188-89 (rejecting argument that minority shareholder who is also employee gains protection from at-will discharge simply because termination allowed defendant to acquire his stock); *accord Gallagher v. Lambert*, 74 N.Y.2d 562, 566-67 (1989) (holding the same with respect to shareholder's fiduciary duty claim).

faith and fair dealing cannot negate defendant's express right to terminate the revised agreement without cause at any time."); *accord Murphy*, 58 N.Y.2d at 305 ("[U]nder New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains."). Therefore, the Court grants plaintiff's motion to dismiss the second and third counter-claims.

C. Remaining Claims, Leave to Amend

The parties agree (and, in any event, the Court independently concludes) that the remaining claims—the fourth and seventh causes of action, for a declaratory judgment and attorney's fees—were entirely dependent on Montalvo's first three causes of action. The dismissal of the first three causes of action, therefore, requires the dismissal of the fourth and seventh causes of action as well.

Montalvo did not request leave to amend and, in any event, it is clear that any proposed amendment would be futile given the unambiguous language in the APA. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.").

IV. CONCLUSION

Both the APA's explicit language and the presumption under New York law, which Montalvo failed to rebut, make Montalvo an at-will employee whom plaintiff could terminate for any reason. Because termination without cause was

plaintiff's right under the contract, and because the Court may not imply a duty inconsistent with that contractual right, Montalvo's claims for breach of contract and the implied convent of good faith and fair dealing fail as a matter of law. The other two counter-claims were dependent on the breach of contract and implied covenant claims, and therefore the Court grants plaintiff's motion to dismiss in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 24, 2014
       Central Islip, NY

\*     \*     \*

Plaintiff is represented by Craig Annunziata, James M. Hux, and Joel W. Rice, Fisher & Phillips LLP, 10 South Wacker Drive, Suite 3450, Chicago, IL 60606. Montalvo is represented by David Bolton, Suite 509, 666 Old Country Road, Garden City, NY 11530.